JOSEPH A. DIEHM et al., Plaintiffs, *v.* CITY OF NEW YORK et al., Defendants.

Supreme Court, Special Term, Queens County, June 10, 1955.

*Milton J. Goell* and *Robert E. Delany* for plaintiffs.

*Peter Campbell Brown, Corporation Counsel (Maurice Weitzer* of counsel), for City of New York and others, defendants.

*Hodges, Reavis, McGrath, Pantaleoni & Downey* for North Queensview Homes, Inc., defendant.

HOGAN, J. Plaintiffs, as taxpayers, seek to restrain the defendant City of New York, under section 51 of the General Municipal Law, from granting partial tax exemption to a co-operative apartment development for middle-income families, proposed to be erected on privately owned land by defendant North Queensview Homes, Inc., a redevelopment company organized in 1952, under the Redevelopment Companies Law (L. 1942, ch. 845, as amd.).

Prior to the commencement of this action, the city proposed to condemn the subject property, for the purposes of the defendant North Queensview Homes, Inc., on condition that the latter would pay the entire cost of such acquisition. The owner of the land began an action to enjoin the condemnation, whereupon these same defendants moved to dismiss its complaint and for

summary judgment. The motions were denied by the Justice then presiding at Special Term, who stated: " I therefore conclude that it may be demonstrated on a trial that the city is here attempting to stretch the concept of ' area ' in order to seize private property for a purpose which, laudable as some may consider it, is not within the powers conferred by the Constitution and statutes of the State. A trial of the issues is accordingly necessary to enable the Court to determine whether or not the governmental agencies involved have acted in a capricious and arbitrary manner and applied a statute to a situation to which it was never intended to have application." (*Beebe Improvement Corp.* v. *City of New York,* 129 N. Y. S. 2d 263, 268.)

No trial was ever held in that action. The City of New York apparently has abandoned its intention of condemning the property, and North Queensview Homes, Inc., now holds an option to purchase it from the owner. In consideration for its proposal to clear the area and to erect co-operative apartments thereon, the city has agreed to grant it partial tax exemption for a period of twenty-five years, under the authority claimed to be conferred upon it by section 26 of the Redevelopment Companies Law.

Objections are again raised, this time by two taxpayers. They claim that: (1) Tax exemption may be granted only " for low rent housing for persons of low income as defined by law, *or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas* " (N. Y. Const., art. XVIII, § 1), (2) the land in question is vacant, (3) vacant land cannot in and of itself, constitute a " slum " area or a " substandard or insanitary " area (4) this particular parcel is too small to constitute an " area " and (5) the planning commission and the board of estimate of New York City have no authority in law to grant any tax exemption under the conditions here present. (Italics supplied.) (At the present time the property is assessed for $176,000. Under the proposed plan tax exemption will be granted for a period of twenty-five years only as to that portion of the assessed valuation of the improved parcel in excess of $850,000).

The questions presented to the court upon the trial are — First, does the subject property fall within any category defined by the Constitution or the enabling act?, and, Second, if it does, was the action of the board of estimate in granting partial tax exemption of this particular land to the defendant North Queensview Homes, Inc., arbitrary and capricious?

From the testimony, the exhibits and the inspection made by the court, it appears that the property consists of approximately two square blocks, from which a gasoline service station and an automobile spring and welding center have been excluded. The remainder, except for another gasoline station and a large storage yard for lumber, steel and scrap iron with a one-story cement block building used in conjunction therewith, consists principally of small garden patches enclosed by makeshift fences, most of them containing dilapidated shanties. Debris and refuse are scattered about the portion that borders on 33rd Road.

The surrounding neighborhood is devoted to industrial and residential uses. On the south are situated Ravenswood Houses, a large group of six-story apartment buildings erected and operated by the New York City Housing Authority, and on the east are Queensview Homes, a new fourteen-story apartment house project operated by a redevelopment company under limited tax exemption. The uncontradicted testimony of defendants' expert witnesses showed that the condition of the subject property had a deteriorating effect on the surrounding neighborhood. They further testified that the existing subsurface conditions were such as to require piles to support any structure placed thereon, and that the additional expense entailed thereby would militate against ordinary redevelopment by speculative private builders, making it unlikely that a housing project would be undertaken without some assistance from the city.

It must first be determined if this is a plan for the clearance, replanning, reconstruction and rehabilitation *of a substandard* and insanitary area, as contemplated by article XVIII of the Constitution.

The court finds that the property is not vacant land. True, most of the buildings are of a flimsy, ramshackle nature, and part of the land consists of small gardens, nevertheless virtually all of it is being utilized for one productive purpose or another. The term " vacant " implies entire abandonment, nonoccupancy for any purpose (Black's Law Dictionary [4th ed.], p. 1717).

It also finds that the area is substandard and insanitary. True, there are no slums, but the presence of these makeshift wooden huts, with no sanitary facilities whatsoever, screened-in garden patches and rubbish heaps in a densely populated and industrialized section of the city are a fire hazard and an open invitation to vagrants as well as a temptation to children and others. By any definition of the term, this area is " substandard " when compared with the rest of the neighborhood or, for that matter, the city as a whole.

The court believes that this is far from the situation envisioned by the Court of Appeals when it said in the case of *Kaskel* v. *Impellitteri* (306 N. Y. 73, 80) : " One can conceive of a hypothetical case where the physical conditions of an area might be such that it would be irrational and baseless to call it substandard or insanitary, in which case, probably, the conditions for the exercise of the power would not be present ", and, (p. 81) : " It is not to be assumed that responsible public officers will, in some future instance, label as ' substandard or insanitary ' an area in which there are no buildings at all, or fine, modern buildings only, or that they will attempt to condemn a number of such buildings by stretching the concept of ' area '."

As to plaintiffs' contention that this parcel of approximately two square blocks is too small to constitute an area as intended by the Constitution and defined by the enabling statutes, I think it has no merit. Slums and substandard and insanitary conditions can exist on any piece of land large enough to contain even a single building. The evils sought to be remedied should not be suffered to continue merely because in a particular instance they are confined to a relatively small area.

Plaintiffs further urge that the doctrine of the *Kaskel* case (*supra*) be not extended by sanctioning the defendants' plan of partial tax exemption. I find that the present proposed plan is well within the limits delineated by the Court of Appeals. There it was held that the board of estimate was vested with the power of determining whether the site in question was a " slum " area, that since there was support for its affirmative determination the court could not substitute its own judgment for such determination, and that the board of estimate could characterize the site as a slum area even though it included, in addition to some palpable slums, a modern bank building, stores and parking fields. It even went so far as to deny a trial of the issues when the complaint charged that in order to procure the condemnation of a site at Columbus Circle for the erection of a privately operated coliseum, the city arbitrarily and capriciously, stretching the concept of area, had engaged in a form of gerrymandering by tying that land, and certain intervening parcels, to a slum area on Ninth Avenue and then declaring that the *entire* assembled parcel constituted a " slum area ".

Certainly it is no extension of that ruling to hold that the board of estimate for the purposes enumerated in the Redevelopment Companies Law and on the facts as set forth herein, may declare this integral, two-block area to be " substandard ", when a physical inspection discloses ample evidence to support such a finding.

Section 2 of that law, entitled " *Policy of state and purpose of act* ", reads in part as follows: " in certain areas of municipalities * * * there exist substandard conditions * * * that there is not in such areas a sufficient supply of adequate, safe and sanitary dwelling accommodations properly planned and related to public facilities * * * that the aforesaid substandard * * * conditions depress and destroy the economic value of large areas and by impairing the value of private investments threaten the sources of public revenues; that the public interest requires the clearance, replanning, reconstruction and neighborhood rehabilitation of such substandard * * * areas * * * and that clearance, replanning, reconstruction, and neighborhood rehabilitation are essential to the protection of the financial stability of such municipalities; that in order to protect the sources of public revenue it is necessary to modernize the physical plan and conditions of urban life; that these conditions cannot be remedied by the ordinary operations of private enterprise; that provision must be made to encourage the investment of funds in corporations engaged in providing redevelopment facilities to be constructed according to the requirements of city planning and in effectuation of official city plans and regulated by law as to profits, dividends and disposition of their property or franchises; * * * and that provision must also be made for * * * public assistance of such corporations * * * by the granting of partial tax exemption; that the cooperation of the state and its subdivisions is necessary to accomplish such purposes; that the clearance, replanning and reconstruction, rehabilitation and modernization of substandard * * * areas and the provision of adequate, safe, sanitary and properly planned housing accommodations in effectuation of official city plans by such corporations * * * in these areas are such public uses and purposes for which * * * partial tax exemption (may be) granted ".

The finding by the board of estimate that the rehabilitation of this blighted section of the city is in furtherance of that stated policy, and that such rehabilitation should be encouraged and made possible by a grant of partial tax exemption, is certainly not so arbitrary and capricious as to warrant an invasion of its administrative province by the court. Accordingly, the complaint must be dismissed without costs. This shall constitute the decision of the court pursuant to section 440 of the Civil Practice Act.

Let judgment be entered accordingly.